Pearson, J.
 

 This was assumpsit. The declaration? contained two counts; one on a special contract, the other for goods sold and delivered.
 

 The defendants, who were the owners of a fisher}7, applied to the plaintiffs, who were merchants, at their store in Norfolk, for ten rolls of “seine rope,” and informed them that it was to be used at their fishery. The plaim tiffs did not have the article on hand, but engaged to procure it and send it to the defendants, at the price of 13f cts. per pound, and which was accordingly done.
 

 The rope sent was new and of the size and kind known as “seine rope.” The defendants used it, but it proved to be of inferior quality, and repeatedly broke in drawing the seine, and was unfit for fishing purposes. The Court instructed the jury, that if the plaintiffs knew the pur
 
 *167
 
 pose for which the rope was intended, and it was not present at the time of the sale, so that the defendants had no opportunity to judge of its quality, the law implied a warranty, that it should be reasonably fit for the purpose of fishing:
 

 That, if the defendants, when the rope was sent, could by examination, have detected its bad quality and unfitness, their reception of it was a waive of the warranty. But if its bad quality and unfitness could not be detected except by actual trial, and using it in the fishing operations, the reception of it was not a waive of the warranty ; and if the jury were satisfied that it was in fact of bad quality and unfit for fishing purposes, they ought to make a reasonable deduction from the price. The jury made a deduction, and the plaintiffs except, for error in the charge.
 

 It is a principle of the common law, that no warranty of quality is implied in the sale of goods.
 
 “Caveat emptor.”
 
 In the absence of fraud, if the article proves to be of bad quality, the purchaser has no redress, unless he has taken the precaution to require a warranty. This rule is founded in wisdom ; and its practical good sense is so well fitted to the habits of our trading people, that we are disposed to adhere to it. We believe it is adopted in almost all of the States of the Union, where the common law prevails.
 

 The law protects against fraud, and the vendor is held liable, if he
 
 knows
 
 of the defect. If he is innocent, the purchaser must protect himself by a warranty. And it is supposed, that, in general, trade is sufficiently protected, in the absence of fraud, by the inducement which is held out to all dealers, to take proper care in the selection of their merchandise, arising from the fact, that by selling articles of good quality, they secure customers, and by selling those of bad quality, their customers desert them. Merchants buy upon their own judgment; they sell upon
 
 *168
 
 the judgment of their customers, and only undertake for good faith and fair dealing. If a warranty was implied of the good quality of every article sold, there would be but few merchants, or prices would be exorbitantly high.
 

 His Honor was of opinion, that, in this case, there were two facts, which furnished a sufficient ground for making an exception to the general rule. The plaintiffs knew the purpose for which the rope was intended, and it was not present to be judged of by the defendants. One or both of these facts might have been a very sufficient reason for requiring a warranty, and then it is to be presumed an advance in the price would have been insisted on. But we do not see how they can furnish a ground for the law to imply a warranty in favor of the defendants, when they neglected to take one for themselves.
 

 The purpose, for which an article is intended, is known in almost every case, and the accident that it happens to be expressed, unless it
 
 enters into and-forms a part of the
 
 bargain. can make no difference. One buys a set of harness, for instance. Can it make any difference, if he happens to say that his purpose is to use them for his carriage? The purpose is known, whether he says so or not, and the
 
 price
 
 is the same. Where, then, is the consideration to support this implied warranty ; what does he
 
 pay for it ?
 
 The case would be different, if he should tell the merchant, that his carriage was particularly heavy, or his horses unruly, and he was willing to pay a higher price to have the article warranted to be strong and fit for his purpose. So, if two men buy seine rope ; one says nothing about his purpose ; the other most unnecessarily says, he intends it for his fishery; both pay the same price, and the rope turns out to be of bad quality ; upon what principle ean the one insist on a reduction, while the other is obliged to pay the price agreed on ?
 

 But the rope was not present and the defendants had no opportunity, at the time they engaged it, to judge of
 
 *169
 
 its quality. If the bad quality could not have been de* tected by an examination, and it was necessary to put it in use, befere its unfitness could be discovered, what did the defendants lose by not having a chance to inspect it? They saw it when it was sent, which answered the same purpose, as if they had seen it when it was bought. One inspects for himself; another sends an or-* der — both pay the same price- — -the rope upon trial, is found to be unfit — can there be any difference, and from what can the law imply a warranty in the one case and not in the other ?
 

 His Honor was of opinion, that if the bad quality could have been detected by examination, the defendants, by receiving it, impliedly waived the implied warranty. — * We do not clearly apprehend the meaning of this part of the charge, unless it be, that if the defect was obvious, the defendants could not, in such case, complain of being cheated, for their means of information were the same as that of the plaintiffs’, and a man can not be cheated, who acts with his eyes open and knows of the defect, before the contract is executed. In this we concur.
 

 The only difference it can make, when the purchaser sees the article and when he sends an order, or has not an opportunity to see it, is, that in the former case he ; judges for himself in the latter he constitutes the vendor, his agent, to select for him, and from the confidence reposed has a right to expect that the vendor will give him the aid of his judgment. But this does not furnish ground to imply a warranty ; there is no consideration for that. It only gives him a right to a fair exercise of the vendor’s judgment in place of his own, and he has no cause of complaint, unless there be fraud, from which the law equally protects in both cases. 1
 

 The decisions, in which an exception is made, when the vendor is the manufacturer of the article, have no ap
 
 *170
 
 plication to the present case, and we do not enter upon the enquiry, how far the exception is well founded.
 

 There was error in the charge. There must be a
 
 venire de novo.
 

 Per Curiam* Judgment reversed and
 
 venire de novo„