## Whitaker *et al.* *versus* Eastwick *et al.*

1. A purchaser takes the risk of the quality of an article sold unless there be fraud or warranty.

2. In a sale of goods there is an implied warranty of title, and generally of the species, but not of quality.

3. Mere representation is not warranty.

4. The relation of seller and buyer is not a confidential one.

5. The plaintiffs purchased a cargo of coal by the bill of lading and the representation of defendants that it was "good coal well adapted for generating steam." In a suit for defect in the coal, *Held*, that evidence that the coal had much dirt in it and it took an increased quantity to generate steam was inadmissible.

6. Borrekins *v.* Bevan, 3 Rawle 23; Fraley *v.* Bispham, 10 Barr 320; followed.

February 4th 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* Of July Term 1872, No. 2.

This was an action of assumpsit, brought November 5th 1870, by Charles J. Eastwick and Philip S. Eastwick, trading as Eastwick & Brother, against William H. Whitaker, Daniel Focht and John Wadlinger, trading as W. H. Whitaker & Co., to recover back part of the price paid by the plaintiffs to the defendants for a cargo of coal, which the plaintiffs alleged was inferior in quality to the representations of the sellers.

C. J. Eastwick, one of the plaintiffs, testified:—

"This coal when purchased was represented as a cargo of good coal and particularly well adapted for generating steam. We did not see the coal when we purchased it. The defendants were miners and shippers of coal. We bought the coal of them in Philadelphia, on the bill of lading. When we bought it, it was on board a canal-boat. We bought it deliverable at Schuylkill Haven. It had just been shipped when we bought it. The boat had just started on its way down. We bought the coal here on the bill of lading."

The plaintiffs' counsel then offered to prove that the coal furnished had at least twenty per cent. of slate and dirt in it, and that it was unmerchantable and unmarketable.

The defendants' counsel objected to the offer because it was not accompanied by any offer to show fraud or warranty.

The court (Thayer, J.) admitted the offer and sealed a bill of exceptions.

The witness continued: "I sold the coal with the same representations to Messrs. Crozer & Sons, of Chester. The coal was then lying in the canal of the Schuylkill Navigation Company. After it had reached the Crozers, I received a letter from them claiming a deduction. I had not seen the coal when they purchased. I saw it afterward, and it was full of dirt and slate. Chestnut coal is about the size of a horse chestnut. Crozer claimed a deduction of twenty per cent. It was not merchantable coal. I allowed it and notified the defendants, but they declined to make the allowance. I had paid the defendants before I discovered the defect. John Wadlinger is the miner, and he is one of the partners of defendants. It was mined and shipped by him, and sold to me by defendants. Mr. Whitaker admitted to me that there was other coal besides Wadlinger's put in the cargo. I asked Whitaker if he had a good chestnut coal to sell. He said he had. He would sell me a cargo of Wadlinger's coal. He gave me a price, which I think was $2.75 a ton at Schuylkill Haven. I then found a purchaser, and closed with Whitaker at $2.60 a ton. I asked him if it was good for steam purposes. He said he had sold a good deal of it for that purpose, and it was well adapted for it. What he said was that this kind of coal—John Wadlinger's

[Whitaker v. Eastwick.]

coal—was good for that purpose. I had bought Wadlinger's coal before frequently and in large quantities, but never the chestnut size. I was acquainted with its quality. It was on account of my knowledge of the larger sizes that I placed confidence in his representations. The cargo was bought deliverable at Schuylkill Haven. I bought partially on my knowledge of the coal. He did not warrant the coal. He acknowledged that he knew other coal—a number of cars—were put into it. He and I ascertained that it was the screening out of dirt-banks. Good coal was then selling at $2.75 a ton. I bought at 15 cents less than a first-class price. I sold Crozer at $4.87 a ton delivered, equivalent to $2.75 a ton at Schuylkill Haven. I allowed Crozer twenty per cent. on $900.75, the amount of our bill." * * *

There was other evidence of the same character admitted under objection and exception.

The verdict was for the plaintiffs for $112.01.

The defendants took a writ of error, and assigned for error the admission of the evidence objected to.

*S. W. Pennypacker*, for plaintiffs in error.—There being no fraud or warranty, the evidence was not admissible: Borrekins v. Bevan, 3 Rawle 23; Wetherill v. Neilson, 8 Harris 448; Fraley v. Bispham, 10 Barr 320; Jennings v. Gratz, 3 Rawle 168.

*J. Carty*, for defendants in error.—The bill of lading with the representation of the sellers was an implied warranty that the coal was merchantable: Hanks v. McKee, 2 Litt. 227; Gardiner v. Gray, 4 Camp. 144; Miller v. Schilizzi, 17 C. B. 649; Hyatt v. Boyle, 5 G. & J. 110; Edwards v. Hathaway, 1 Phila. R. 547.

The opinion of the court was delivered, May 11th 1874, by

MERCUR, J.—It is well settled as a general rule that the purchaser takes the risk of the quality of an article purchased unless there be fraud or warranty. In this case no fraud is alleged, and there was no express warranty. The action is assumpsit on an implied warranty of quality. There is an implied warranty of title and generally of the species in a sale, but not of quality. Hence, where the vendor in the bill of parcels described the article as blue paint, it was held to be an implied warranty that it should be blue paint: Borrekins v. Bevan *et al.*, 3 Rawle 23. Fraley v. Bispham, 10 Barr 320, was a case of the sale of tobacco by sample. In the bill of parcels it was stated to be "superior sweet-scented Kentucky leaf tobacco," yet the statement was held: First, to be no evidence from which a jury might infer a warranty that it was either superior or sweet-scented. Secondly, that the vendor was not liable in an action *ex contractu*, if it was Kentucky leaf tobacco, although of a very low quality, ill flavored, unfit for

[Whitaker *v.* Eastwick.]

the market and not sweet-scented.  It was there said all gradations in quality are at the hazard of the buyer.

The opinions of persons differ greatly as to the quality of goods sold.  Purchasers do not generally rely solely upon the mere opinion of the vendor.  They either act upon their own judgments, or exact something more than the mere opinion of the person from whom they are buying.  The law gives a remedy for breach of contract, but cannot undertake to give damages for mere expectations disappointed.  Mere representation does not constitute a warranty.  The relation between buyer and seller is not a confidential one.  If the buyer, instead of exacting an explicit warranty, chooses to rely upon the bare opinion of one who knows no more about the matter than he does himself, he has himself only to blame for any loss he may thereby sustain :  McFarland *v.* Newman, 9 Watts 55 ;  Wetherill *v.* Neilson, 8 Harris 448.  In the absence of an agreement by the vendor the purchaser takes at his own risk as to the quality :  Eagan *v.* Carr, 10 Casey 236.

The facts in this case show the defendants in error had previously frequently purchased in large quantities this kind of coal, but never of the chestnut size.  They were, therefore, acquainted with its general character.  They purchased this coal in question at fifteen cents less per ton than first-class coal was then selling.  They now complain that it contained an unusually large percentage of slate and dirt.  They got substantially the kind of coal for which they bargained.  The evidence offered and received under objection was to its quality.  It was error to admit it.  The fact that it was represented as being well adapted to generating steam, and that by reason of its impure quality a larger quantity is required to generate a given amount of steam, are all insufficient to raise an implied assumpsit.  The learned judge, therefore, erred in admitting the evidence.

Judgment reversed, and a *venire facias de novo* awarded.