## Samuel H. Hansen and Theodore Sonnicksen v. The United States Brewing Co., etc.

1.  Bill of Exceptions—*References to Matters Following Judge's Certificate.*—The words "For instructions and motion for a new trial see next page," in a bill of exceptions, are sufficient to make the instructions and motion referred to a part of such bill of exceptions, although they follow the certificate of the trial judge.

2.  Same—*Presumptions as to Different Handwritings in.*—There can arise no presumption adverse to the authenticity of a bill of exceptions from the mere fact it is in various handwritings.

3.  Contracts—*Implied Warranties.*—A made a contract with B by which he was to purchase 2,000 barrels of beer from B, deliveries to be made from time to time as requested: at the same time he received from B $300, to be retained if the contract was complied with by him, otherwise to be returned.  After a time A refused to receive any more beer because of its claimed poor quality and unfitness for use in his business. *Held*, that the contract contemplated the delivery of beer of a merchantable quality in A's business, and that a refusal by A to receive beer not of that quality, did not constitute a breach of the contract authorizing a recovery of the $300.

Assumpsit, on the common counts. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded. Opinion filed May 24, 1897. Rehearing denied. Opinion filed June 14, 1897.

ENNIS & COBURN, attorneys for appellants.

The law demands that if a man sells generally he undertakes that the article sold is fit for some purpose; if he sells for a particular purpose, he undertakes that it shall be fit for that particular purpose. Jones v. Bright, 5 Bing. 533.

The law most explicitly requires a manufacturer to warrant, by implication, as fit for the purpose required, the article sold, whether the order of the sale be in writing or verbal. Bagley v. Cleveland Roll Mill Co., 21 Fed. Rep. 159.

The true distinction is that when the goods purchased of a manufacturer are to be made, or are not susceptible of examination, there is an implied warranty; and that there is also an implied warranty notwithstanding the goods may be subject to examination where the defects are latent and the vendee clearly relies on the skill and judgment of the maker, etc. Beals v. Olmstead, 24 Vt. 114; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108; French v. Vining, 102 Mass. 132; Jones v. Just, L. R., 3 Q. B. 197; Parson on Con. (5th Ed.), 586 and note a; Biddle on Chat. War., 8, Secs. 174–182.

Breach of warranty is a question of fact for the jury. Lanz v. Wacks, 50 Ill. App. 263; Avery Plant Co. v. J. L. & W. D. Rigg, 56 Ill. App. 599; Jones v. Bright, 5 Bing. 533.

As to the law in this State on implied warranty we cite: Babcock v. Trice, 18 Ill. 420; Thorne v. McVeagh, 75 Ill. 81; Crabtree v. Kile, 21 Ill. 180; Aultman v. Webber, 28 Ill. App. 91; Murray v. Carlin, 67 Ill. 286.

WINSTON & MEAGHER, attorneys for appellee.

The bill of exceptions is esteemed as a pleading of the party alleging the exception. If liable to the charge of ambiguity, uncertainty or omission, it must be most strongly construed against the party who prepared it. Rogers v. Hall, 4 Ill. 6; Alley v. Limbert, 35 Ill. App. 592.

The appellant must be responsible for all uncertainties and omissions in the bill of exceptions. A plausible conjecture that certain facts occurred at the trial will not be enough to justify the Appellate Court in assuming that those facts did exist. Spangenberg v. Charles, 44 Ill. App. 526; Alley v. Limbert, 35 Ill. App. 593; Matson v. The People, 50 Ill. App. 210; Page v. Northwestern Brg. Co., 54 Ill. App. 158; Wright v. Griffey, 44 Ill. App. 115; Stock Quotation Telegraph Co. v. Board of Trade, 44 Ill. App. 358; 144 Ill. 370; A., T. & S. F. R. R. Co. v. Baltz, 44 Ill. App. 458.

A paper attached to a bill of exceptions after the signature of the trial judge should not be considered. Nor will the instructions so appended instead of being copied therein. Hursen v. Lehman, 35 Ill. App. 489; C., M. & St. P. Ry. Co. v. Harper, 128 Ill. 384.

Before an Appellate Court will reverse a case for error other than that appearing in the record proper, it is imperative that the bill of exceptions itself over the signature and seal of the judge show, first, that a motion for a new trial was made; second, that it was denied; and, third, that an exception was taken to such denial. Shedd v. Dalzell, 30 Ill. App. 357; James v. Dexter, 113 Ill. 654; Engel v. Sellers, 51 Ill. App. 577; City of Mt. Vernon v. Satterfield, 53 Ill. App. 39; Griffith v. Welsh, 32 Ill. App. 396.

Mr. Presiding Justice Shepard delivered the opinion of the Court.

A motion is made by appellee to strike from the records pages 78 and 79 thereof, being the sheet next following the page in the bill of exceptions upon which appears the certificate and seal of the trial judge.

Upon page 77, on which appears the certificate and seal of the trial judge, there is written above such signature the following:

"(Here insert the instruction given, and the motion for a new trial, filed Dec. 19, 1896.)          F. Q. B."

Such initials being those of the name of the trial judge, and the sentence, as well as they, being apparently in his handwriting.

To the left of such sentence there is written in ink in a different handwriting, as follows:

" For instructions and motion for new trial see next page."

And said " next page," and the page following on the same sheet of paper, are the pages 78 and 79 which are moved to be stricken from the record.

If we were to follow former decisions of our own, we should be constrained to grant the motion, but the Supreme Court has said we were wrong. Legnard v. Rhoades, 156 Ill. 431, and the motion is denied.

There can arise no presumption adverse to the authenticity of a bill of exceptions from the mere fact that it is in various handwritings.

The appellee was engaged in the business of brewing and selling beer, and on March 2, 1894, the appellants, who were beer bottlers and peddlers, began to purchase beer from the appellee, and so continued to do from day to day for the space of two weeks. Then, on March 16, 1894, a contract in writing was entered into between the parties, whereby the appellee loaned to the appellants $300 and agreed to furnish them with 2,000 barrels of keg beer at the price of four dollars per barrel, and appellants agreed to pay for the beer at such rate or price upon delivery, deliveries to be made when requested by appellants.

And it was further agreed that if appellants should well and truly perform their agreement and take and pay for said 2,000 barrels, the said $300 loaned should belong to them, but there was given to the appellee the right to terminate the contract and to have refunded to it the said $300, with interest, as liquidated damages, for a breach by appellants of any of the covenants or agreements of the contract.

The contract was lived up to by both parties until sometime in May, 1894, when some of the beer that had been delivered was returned because of its claimed poor quality and unfitness for use by appellants. An interview between the parties resulted, and disagreements arising between them about the quality of the beer being as contracted for

and as compared with former deliveries, etc.   No further deliveries were made or offered on the one hand or requested on the other.

This action was then brought by the appellee to recover from appellants the said three hundred dollars and interest.

At the conclusion of the evidence the court took the case from the jury by a peremptory instruction to find the issues for the plaintiff, and to assess the damages at the sum of $352.50, being three hundred dollars and accrued interest.

A special plea, filed by the appellants to a special count upon the contract, having been mislaid, it was stipulated at the beginning of the trial as follows:

"It is stipulated and agreed by and between the plaintiff and defendants herein that under the special plea heretofore filed by defendants any evidence may be offered touching the quality of the beer furnished by the plaintiff to the defendants, or touching any warranty or implied warranty which may have been made by the plaintiff to defendants in relation to the same, which, under any circumstances, could be competent evidence."

It is probable that every defense open to the appellants under either their special plea or the above stipulation could have been made under the general issue.

It can not be denied that the contract between the parties contemplated the delivery by the appellee of beer that was of a merchantable quality for the business of the appellants, and whether the beer that was furnished, and that appellee was able and willing to furnish, was of such quality, was a question of fact for the jury.   The mere fact that a few barrels of the beer that was furnished was of a poor quality and not fit for a beverage, would not have justified the appellants in refusing to accept any more beer from the appellee, but if it were of such unfit character, and appellee either could not or would not furnish such as the contract called for, then the appellants would have been justified in declining to accept any more of such bad quality, and in so declining would not have committed a breach of their contract.

There was evidence on both sides that appellee's manager,

Mr. Gunderson, said to appellants at the interview had with them, that he was delivering the best beer he could, and that it was just as good then as it was when they first commenced to take it.

The beer being the best that appellee could deliver, it became an important question of fact whether it was as good as that formerly delivered and merchantable and fit for use within the contemplation of the contract. The determination of such questions was of vital importance in determining whether appellants were guilty of a breach of contract, for if they were, a recovery against them would be proper, but not otherwise.

A prima facie case of a breach of the contract by the appellants was made out when the appellee proved that the appellants said they would not take any more of the kind of beer that appellee had been lately delivering and was ready to continue to deliver, and it became then the privilege and right of appellants to show, if they could, why they so declined, so as to avoid the effect of such prima facie breach on their part. The defense appellants sought to interpose to the action was not by way of recoupment for damages, but was that they were not guilty of the breach alleged against them, leaving out all question of damages that they might claim because of the breach being by the appellee.

This latter defense the appellants attempted repeatedly to establish by offering to prove by several witnesses that the beer was not merchantable and could not be used as a beverage; that it was " rotten," etc., and that it was not of the quality of that formerly delivered.

It was error by the trial court to refuse to admit such testimony, and the judgment will be reversed and the cause remanded.

MR. JUSTICE GARY ON PETITION FOR REHEARING.

" Homer sometimes nods."

The counsel for the Brewing Company have not caught the meaning of this court in the opinion heretofore filed. That meaning is that if the Brewing Company would not, at

all, furnish beer of merchantable quality—which both sides assumed had been furnished before the contract was made—it could not recover the $300, even if the appellants would not take the bad beer.

The Brewing Company was bound to deliver beer of the quality the contract contemplated.

It could not refuse to deliver any beer (if the appellants would take and pay for it,) and recover the $300.

Suppose by the increase of the tax on beer, or by some increased cost of ingredients, the market price of beer had so gone up that the Brewing Company concluded not to sell any more to the appellants at $4 per barrel, could it have stopped the supply and reclaimed the money they had loaned?

We do not think that the counsel of the Brewing Company would claim that.    Now what is the difference between a direct refusal to furnish any beer, and a refusal to furnish any of the quality contemplated by the contract?

The petition is denied.