T. A. ASHFORD AND PUGH & BROOKS COMPANY v. H. C. SHRADER
COMPANY.

(Filed 14 September, 1914.)

**1. Vendor and Purchaser—Contracts—Implied Warranty—Trials—Burden of Proof.**

There is ordinarily no implied warranty of quality of wares upon a contract of sale made between dealers, but the wares delivered thereunder must, at least, be salable; and where oranges are sold by the box, without reference to quality, there is an implied warranty that they will not be delivered in such unsound or rotten condition that they will not be merchantable; and the burden of proof is on the purchaser in his action to recover the consequent damages in his action upon the implied warranty.

**2. Same—Waiver—Inspection—Questions for Jury.**

Where the seller of oranges by the box ships them bill of lading attached to draft, subject to inspection, and they are accepted by the purchaser, and there is evidence tending to show that he had first inspected them in the usual or customary manner without discovering their damaged condition, the question of whether he waived his right to recover damages by his inspection is properly left to the determination of the jury, with the burden of proof on the plaintiff to show that he made the inspection with ordinary care.

APPEAL by defendant from *Daniels, J.,* at February Term, 1914, of CRAVEN.

This is an action to recover damages for an alleged breach of an implied warranty in the sale of 600 boxes of oranges. Both the plaintiffs and the defendant are dealers in oranges, plaintiffs doing business at New Bern and the defendant in Florida. The contract was to sell 600 boxes of oranges at a price agreed on, without further description, and the right was given to the plaintiffs, who were the purchasers of the oranges, to inspect.

The oranges were shipped to New Bern to the order of the defendant, with draft upon plaintiffs and bill of lading attached. There was evidence offered upon the part of the plaintiffs that they exercised ordinary care in the inspection of the oranges, and did not discover any defect therein, and that they then paid the purchase price, and it was afterwards discovered that one-third of the oranges were rotten and unfit for sale.

His Honor charged the jury, among other things, as follows: "Now, under these circumstances, there was what, in law, is called an implied warranty that the oranges should be merchantable, that is, salable; not that they should be of first quality, but that they should be salable. And I charge you that if you believe all the evidence to be true as testified to by the parties, plaintiffs and defendant, you will answer the first

issue 'Yes.' That is, there was a warranty in the sale of the oranges to the plaintiffs by the defendant—not an express warranty; I have excluded that, the plaintiffs having failed to establish an express warranty by their evidence; but what in law is called an implied warranty; that is, a warranty that the goods should be salable; so I say if you find the facts to be as testified to by the witnesses, you will answer 'Yes'; if you do not, you will answer the issue 'No.'

"The burden is upon the plaintiffs on this issue to satisfy you by the greater weight of the evidence that there was any warranty in the sale of the goods. If they have so satisfied you, you will answer the issue 'Yes'; if they have not, you will answer 'No.'

"The next issue for your consideration is: 'If so, was there a breach of said warranty?' The plaintiffs allege there was, and the burden is upon them to satisfy you of the truth of this contention. The breach of warranty, as they contend, consists in the fact that the oranges were not merchantable or salable, and as evidence of that they testify as to the condition of the oranges after they came in their store. The plaintiffs testified that they had made an examination and inspection of them at the depot, and they seemed to be all right, and they were then taken to their store. You will remember what they said in their testimony; and after a few days they found, upon examination, that the oranges were one-third to one-half rotten. The defendant would be liable, if you find them liable at all, for such damage or deterioration in the oranges as existed at the time of their delivery to the plaintiffs and their assignee, by the railroad company, to the plaintiffs, but would not be liable for any damage or deterioration by reason of some cause after the oranges came into the possession of the plaintiffs, if they were merchantable and salable when delivered here in New Bern. The defendant contends that oranges are of a perishable nature; that they were left at the depot before taken out by the plaintiffs; that they were then delivered to the plaintiffs and their assignee, and then remained in their place of business for several days before their condition was discovered; and the defendant argues that if they were in a damaged condition when they arrived here, and when the plaintiffs took them from the railroad company, that with the inspection they made of the fruit they would have discovered any damage or deterioration, if any existed, and that you ought to find that the damage complained of by the plaintiffs came from some cause arising in their places of business, and that there never was any breach of warranty by the defendant.

"You will take all the evidence bearing on that point, and say whether or not there was any breach of warranty. If you are satisfied by the greater weight of the evidence that at the time the oranges were delivered to the plaintiffs that they were not in a merchantable

or salable condition, then your answer to this issue would be 'Yes'; if you are not so satisfied, then your answer would be 'No.' If you find there was a warranty, and that there was a breach of such warranty, then you will consider the third issue: 'If so, did the plaintiffs waive such warranty?' You will remember that the goods were shipped subject to the inspection of the plaintiffs. They were not to accept the goods, the oranges, unless, after inspection, they were found to be merchantable or salable; and they had the right to reject them if, upon inspection, they found them not to be up to the warranty, if you find there was a warranty; and they had that right to inspect before they accepted and received them. It was the duty of the plaintiffs, under this order permitting inspection, when these oranges came here to exercise the care of a reasonably prudent man, and to give them a reasonable inspection in order to determine whether or not they were merchantable or salable. If you find that they did exercise the care of a man of ordinary prudence, reasonable care, in making the inspection, and that they were unable, in the exercise of such care, to discover that the fruit was in bad condition—that is, of course, if you find it was in bad condition at the time of the inspection—then the plaintiffs would have performed their duty in respect to that inspection, and would not have waived the warranty, if there was a warranty; and in that event you would answer the issue 'No.' But if you find that the plaintiffs failed to exercise such care, and thereby failed to discover that the fruit was in bad condition, if it was in bad condition, and accepted and used the oranges, or some of them, then you would answer the issue 'Yes,' because in that event there would have been a waiver of any warranty made. The defendant would be liable if a warranty was a part of the contract, and it was a part of the contrct that the plaintiffs could go to the car and make a reasonable inspection of the fruit, if the plaintiffs failed to make such an inspection, and by reason of such failure did not find out the bad condition of the fruit, and under these circumstances accepted and used some of the fruit, then there would be an acceptance after an inspection, and that would be a waiver of any warranty, and you should answer the issue 'Yes.' "

The defendant excepted to that part of the charge holding that there was an implied warranty that the oranges should be salable, and also to the part of the charge as to the duty imposed upon the plaintiff to inspect.

The jury returned the following verdict:

"1. Was there any warranty in the sale of the oranges? Answer: Yes.

"2. If so, was there a breach of said warranty? Answer: Yes.

"3. If so, did plaintiffs waive such warranty? Answer: No.

"4. What damage, if any, are plaintiffs entitled to recover of the defendant? Answer: $380."

There was a judgment in favor of the plaintiffs, and the defendant excepted and appealed.

*R. A. Nunn for plaintiff.*
*C. R. Thomas for defendant.*

Allen, J. The maxim of the civil law is *caveat venditor,* while the maxim of the common law is *caveat emptor,* and it is generally held in courts where the common law is administered that in contracts for the sale of personal property, as between dealers, there is no implied warranty as to quality. *Farrell v. Market Co.,* L. R. A. (N. S.), 884, and cases in note; *Shingle Co. v. Mill Co.,* 35 L. R. A. (N. S.), 261, and note; Tiffany on Sales, 252; 35 Cyc., 397; *Dickson v. Jordan,* 33 N. C., 166; *Woodridge v. Brown,* 149 N. C., 302. This rule has not been stated more clearly or with greater strictness anywhere than in the two cases cited from our own reports.

In the first of these, *Pearson, J.,* speaking for the Court, says: "It is a principle of the common law that no warranty of quality is implied in the sale of goods. *Caveat emptor.* In the absence of fraud, if the article proves to be of bad quality, the purchaser has no redress, unless he has taken the precaution to require a warranty. This rule is founded in wisdom, and its practical good sense is so well fitted to the habits of our trading people that we are disposed to adhere to it. We believe it is adopted in almost all of the States of the Union where the common law prevails"; and this is quoted and approved in the later case.

It seems that the exceptions to this rule are (1) where the sale is for a particular purpose; (2) by sample; (3) by particular description, or where it is made by the manufacturer or producer. 35 Cyc., 399.

Along with this principle as to implied warranties is another of equal importance and prominence, and that is that the seller is held to the duty of furnishing property in compliance with the contract of sale that is, at least, merchantable or salable.

In the case of *Randall v. Newson,* 2 Q. B., 109, after quoting from *Best, C. J.,* in *Jones v. Bright,* 5 Bing., 30, that, "If a man sells an article he thereby warrants that it is merchantable—that it is fit for some purpose. If he sells it for that particular purpose, he thereby warrants it fit for that purpose. Whether or not an article has been sold for a particular purpose is, indeed, a question of fact; but if sold for such purpose, the sale is an undertaking that it is fit. The law, then, resolves itself into this, that if a man sells generally, he undertakes that the article sold is fit for *some* purpose; if he sells it for a particular purpose, he undertakes that it shall be fit for that particu-

lar purpose," and after commenting on other English cases, *Brett, J.,* for the Court, says: "I have cited these cases and the principles laid down in them in order clearly to ascertain what is the primary or ultimate rule from which the rules which have been applied to contracts of purchase and sale of somewhat different kinds have been deduced. Those different rules, as applied to such different contracts, are carefully enumerated and recognized in *Jones v. Just.* In some contracts the undertaking of the seller is said to be only that the article shall be merchantable; in others, that it shall be reasonably fit for the purpose to which it is applied. In all, it seems to us, it is either assumed or expressly stated that the fundamental undertaking is that the *article offered or delivered shall answer the description of it contained in the contract.* That rule comprises all the others; they are adaptations of it to particular kinds of contracts of purchase and sale. You must, therefore, first determine from the words used, or the circumstances, what, in or according to the contract, is the real mercantile or business description of the thing which is the subject-matter of the bargain of purchase or sale, or, in other words, the contract. If that subject-matter be merely the commercial article or commodity, the undertaking is that the thing offered or delivered shall answer that description, that is to say, shall be that article or commodity, salable or merchantable."

This authority has been followed in *Jones v. Just,* 3 Q. B., 199; *Grieb v. Cole,* 1 Am. St. Rep., 536; *Howard v. Hoey,* 23 Wend., 350; *Peck v. Armstrong,* 38 Barb., 218; *Warren v. Ice Co.,* 74 Me., 478; *Fitch v. Archbald,* 29 N. J., 164; *Merrien v. Field,* 39 Wis., 580; *Hanson v. Brewing Co.,* 70 Ill. App., 265, and in our own reports in *Main v. Field,* 144 N. C., 311; *Medicine Co. v. Davenport,* 163 N. C., 297.

In the last case *Justice Walker* quotes with approval from Benjamin on Sales and from the English cases, as follows: "If a man sells an article, he thereby warrants that it is merchantable; that is, that it is fit for some purpose. If he sells it for a particular purpose, he thereby warrants it to be fit for that purpose. *Jones v. Bright,* 5 Bing., 544. The principle was clearly expressed by *Lord Ellenborough* in *Gardiner v. Gray,* 4 Campbell, 143, where he denied the application of the rule as to sales by sample: 'I am of opinion, however, that under such circumstances the purchaser has a right to expect a salable article answering the description in the contract. Without any particular warranty, this is an implied term in every such contract. Where there is no opportunity to inspect the commodity, the maxim of *caveat emptor* does not apply. He cannot without a warranty insist that it shall be of any particular quality or fineness, but the intention of both parties must be taken to be that it shall be salable in the market under the denomination mentioned in the contract between them. The purchaser cannot be sup-

posed to buy goods to lay them on a dunghill. The question then is, whether the commodity purchased by the plaintiff be of such a quality as can be reasonably brought into the market to be sold as *waste silk*. The witnesses describe it as unfit for the purposes of waste silk, and of such a quality that it cannot be sold under that denomination.' "

We are, therefore, of opinion that his Honor's charge was correct; that there was an implied warranty in the sale of the oranges that they should be at least salable, and the question as to the waiver of the warranty was submitted to the jury under instructions which were fair to both parties.

The evidence offered upon the part of the plaintiff tended to prove that the oranges were packed by machinery, and that if they were taken from the boxes they could not be replaced, and that the inspection that was made was the one usually made in the trade, and was such as men of ordinary prudence engaged in like business would have made, and the jury has found this evidence to be true.

We find no error in the record, and the judgment is affirmed.

No error.