## McCrory Stores Corporation v. Komins et al.

*J. Wesley McWilliams,* for plaintiff; *Harry M. Berkowitz,* for defendants.

KUN, J., June 30, 1932.—Plaintiff had a lot of radio tubes, approximating 500,000, in its New York warehouse. Defendants agreed to purchase them in writing addressed to the plaintiff as follows: "Confirming verbal arrangement with you today we agree to purchase from you on or before December 1, 1931, all the radio tubes you now have in your New York warehouse, approximating 500,000 tubes at the price of 45c per dozen tubes net cash C. O. D.," followed by provisions for shipment at the cost of the purchasers and deposit of $2000, as evidence of the "good faith" of the purchasers, with the agreement that this sum should be retained by the plaintiff as liquidated damages in the event that the purchasers did not take all the tubes before the date mentioned. This deposit was made and thereafter the defendants withdrew a quantity of tubes and gave to the plaintiff a check for $3750 as "c. o. d." payment thereon, and then promptly stopped payment on the check. This suit is on that check.

A defense was set up that an agent of the plaintiff had represented that eighty per cent. of the tubes were "perfect," on which account defendants denied liability, and, moreover, put in a counterclaim against the plaintiff for damages for alleged breach of contract.

At the argument on rule for judgment, it was made so clear that the defense under the circumstances was untenable, particularly under the more recent authorities on the subject of varying written contracts by parol, that leave was asked to file a supplemental affidavit of defense. The supplemental affidavit of defense is substantially the same as the original, excepting that it is stated in paragraph sixteen of the new matter that the lot of radio tubes in plaintiff's warehouse was "unmerchantable," the evident purpose of which is to plead an implied warranty of merchantability.

It is a serious question whether defendants' amended defense of nonmerchantability may be considered in the face of their prior defense of express warranty that eighty per cent. of the tubes were perfect; for, although the first defense could not be accepted in law because of its violation of the parol evidence rule (Gianni v. Russell & Co., Inc., 281 Pa. 320; Speier v. Michelson, 303 Pa. 66; Williston on Sales, Sec. 215), yet the first affidavit and the amended affidavit must be read together, and showing as they do such a contradiction (an alleged express warranty as to only eighty per cent. of the tubes and an implied warranty of merchantability intended to refer to all the tubes), the case might be disposed of against the defendants on that basis alone. It is quite true that the setting up of an express warranty does not exclude consideration of an implied warranty: Wright v. General Carbonic Co., 271 Pa. 332. This is subject, however, to the provision that they are not inconsistent. The contention that the oral evidence of the alleged express warranty may be admissible unler Feuerstein v. The Century Realty Co. et al., 304 Pa. 271, is unsound. The basis for the admission by oral testimony of the alleged fraudulent representation in that case was that of an alleged inducing fact (that a mortgage had been extended for three years) which did not come within the field embraced by the writing (a lease) there under consideration, in addition to which the whole contract between the parties was in law parol, the lease being but a part of the entire contract. Moreover, the name of the alleged agent making the alleged warranty in the instant case is not given, which is a fatal defect in the pleading. In any event, a mere statement as to quality, though extravagant, as that a thing is "perfect," is nothing more than puffing, and is not a warranty: Michelin Tire Co. v. Schulz, 295 Pa. 140. See, also, Whitaker et al. v. Eastwick et al., 75 Pa. 229, where it appeared that the plaintiff purchased a cargo of coal by bill of lading, the coal being on board a canal boat (very much like the instant case, as the tubes were bought as "you now have" at plaintiff's warehouse), and it was claimed defendants had represented it was good coal well adapted for generating steam. The court held this was a mere representation and not a warranty.

However, the defendants have urged so strongly upon us their defense of unmerchantability of the tubes purchased by them that we shall inquire further into the matter.

The theory of implied warranties in the law of sales was developed to mitigate somewhat the rigors of the rule of caveat emptor. The implication is allowed on the theory that the warranty may be said to have been intended between the parties though not expressed. It depends on the facts and circumstances of the case. Thus, where a buyer expressly or by implication makes known the purpose for which goods are required, and it appears that the buyer relies on the seller's skill and judgment, there is an implied warranty that the goods shall be reasonably fit for such purpose, as generally where goods are ordered there is an implied warranty that the goods shall be of merchantable quality, but this is so only when the dealings are in the usual course of trade. So it has been held that generally there is no implied warranty of fitness in the sale of secondhand articles: Hysko v. Morawski, 230 Mich. 221, 202 N. W. 923; Morley v. Consolidated Mfg. Co., 196 Mass. 257, 81 N. E. 993. In other words, the law will not imply a warranty when the facts and circumstances of the transaction negative such an implication.

What are the facts and circumstances in the case before us as disclosed by the pleadings? The pleadings do not show that the plaintiff manufactured the tubes or engaged generally in their sale. It is shown that the plaintiff maintains "various department stores," and it is the defendants who are jobbers of

radio supplies and materials. So far as any skill in the matter is concerned, it was on the part of the defendants, purchasers, and not on the part of the plaintiff, seller. The plaintiff had accumulated in its New York warehouse a large quantity of radio tubes, as the defendants show in their new matter, "of assorted types and makes," and it is this large lot that the defendant jobbers bought from the plaintiff at forty-five cents a dozen, less than four cents apiece. What it amounted to was a job-lot purchase at such a low price that the expectation was that there would be enough tubes out of the lot which could be sold at current prices, of course greatly in excess of four cents apiece, to make the transaction a profitable one. It must be borne in mind that the purchase was not of any designated make or style or quality of radio tubes but of so many tubes "now" at the New York warehouse of the plaintiff. Certainly, the defendants could have inspected the tubes before purchasing them or as many of them as they thought necessary to satisfy their requirements, and this it was their duty to do, or else protect themselves by an express warranty. This is not a case where an order is sent in for radio tubes of a designated make and the seller selects and ships them, but the purchase of a lot of tubes "now" at seller's New York warehouse in which caveat emptor applies. The difference was set forth with great clarity by Mr. Justice Williams in F. B. Fogel & Co. v. Brubaker, 122 Pa. 7, 14, as follows:

"Sales of personal property are divisible, with reference to the question presented in this case, into two classes, executed and executory. In the first of these, the articles are ordinarily sold upon inspection and the sale is completed by a delivery of the property made at the time of sale. To this class of sales the rule of caveat emptor is properly applicable. If a warranty is desired by the purchaser, he must stipulate for it before the sale is completed, otherwise he will be held to have bought upon his own judgment of the quality and value of the thing purchased. In the second class, the sales are made by sample or by description, the goods not being seen by the purchaser until they have been selected and forwarded by the seller in pursuance of the previous contract or order from his customer. The rule in these cases is not caveat emptor, but caveat venditor, for the duty of selecting and sending the article ordered by description or from sample is on the seller. The buyer is dependent on his good faith in the premises. If the article selected and forwarded by the seller is not of the kind ordered, or if, being of the kind ordered, it is not merchantable in quality, the buyer may refuse to accept it and give notice to the seller." The foregoing was quoted in full with approval in Crunden Martin Mfg. Co. v. Turner, 274 Pa. 425, 431. Such, then, is the law in Pennsylvania since the passage of The Sales Act of May 19, 1915, P. L. 543, as it was before.

At most, what could merchantability mean as applied to the transaction in the instant case? Merchantability does not mean that the article is the best nor that the goods are of first, or even of second, quality: Goldmark v. Simon Bros. Co., 110 Neb. 614, 194 N. W. 686; Stroock v. Lichtentahl, Inc., 224 App. Div. 19, 229 N. Y. Supp. 371; Ashford v. Shrader, 167 N. C. 45, 83 S. E. 29. It is sufficient if the goods be fit for sale at some price: Interstate Grocery Co. v. Geo. W. Bentley Co., 214 Mass. 227, 101 N. E. 147.

The defendants content themselves with the mere statement that the tubes are not merchantable. Just how or to what extent or to what degree is not pleaded. They might not be merchantable as tubes of first quality to be sold to the public at current market prices, but quite merchantable as a job lot of tubes at four cents apiece, so that enough of the lot would be good to justify the deal. Defendants in their pleading show that of those taken by them, 66,000 out of 500,000, thirty per cent. at least are good. The percentage of

270

good tubes might run higher in the remainder of the lot. These observations are made to show how impractical it would be to apply a general rule of merchantability to a transaction of this kind.

Another reason why the defense is not well grounded is that there was no notice of any allegel breach of warranty, whether express or implied, or return or offer of return of the goods beyond the mere statement that they were "tendered" without reference to any time, place or manner, a clearly insufficient plea: Aaron Bodek & Son v. Avrach, 297 Pa. 225.

The contract was alleged to have been made on October 30, 1931, providing that the defendants were to take all the tubes by December 1, 1931. This time was subsequently extended as pleaded by the defendants. As late as December 29, 1931, defendants gave plaintiff their check in suit for the 66,000 tubes withdrawn by them and then stopped payment on the check.

What we have already said disposes of the counterclaim. There being no defense to the plaintiff's claim because of any alleged breach of contract, there is nothing on which to predicate a counterclaim against the plaintiff arising out of the same transaction. Aside from that, the counterclaim is defective as failing to set forth a cause of action. If the alleged representations of the so-called authorized agent of the plaintiff were provable, the pleading is bad for failure to name the agent, as is the rest of the counterclaim defective in claiming losses on resales without naming the alleged purchasers and setting forth how the losses claimed were arrived at: Michelin Tire Co. v. Schulz, 295 Pa. 140; Chodoff v. Michelin Tire Co., 304 Pa. 196; Meguire v. Gallagher, 89 Pa. Superior Ct. 576.

Plaintiff's rule for judgment is made absolute.